IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL DUDO, DANIELLE DUDO, GWENDOLYN TERRELL, SCOTT CLARK, INDIVIDUALLY AND AS ADMINISTRATOR OF THE ESTATE OF LISA CLARK, ROBERT ACQUILLO, and JAMES DWYER, | ) ) ) ) ) ) | CIVIL ACTION<br><br>No. 2:19-CV-00098<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT** |
| Plaintiffs, | ) ) | <u>Counsel of Record for Plaintiffs</u>: |
| v. | ) ) | Richard Shenkan - Pa. Id. No. 79800<br>Shenkan Injury Lawyers, LLC. |
| CAPITAL ONE AUTO FINANCE, a division of CAPITAL ONE, N.A. | ) ) ) | 6550 Lakeshore St.<br>West Bloomfield, MI 48323<br>T: (248) 562-1320 |
| Defendant. | ) ) | F: (888) 769-1774 |

**FIRST AMENDED CLASS ACTION COMPLAINT**

Representative Plaintiffs Michael Dudo, Danielle Dudo, Gwendolyn Terrell, Scott Clark, Individually and as Administrator of the Estate of Lisa Clark, Robert Acquillo, and James Dwyer, on behalf of themselves individually and all others similarly situated, hereby file this Class Action Complaint against Capital One Auto Finance, a division of Capital One, N.A. (hereafter "COAF"), and allege as follows:

**INTRODUCTION**

1. Plaintiffs bring this consumer class action on behalf of similarly situated residents in Pennsylvania, seeking statutory damages pursuant to the Uniform Commercial Code ("UCC"), necessitated by Defendant's systematic failure to comply with the strict statutory procedural disclosure requirements of the UCC relating to post-repossession consumer disclosure notices ( i.e. "Notices of Repossession" as defined below). In this connection, COAF offered for sale and/or sold the repossessed vehicles of Plaintiffs and Class Members at a public auction at Adesa Mercer (i.e., hereafter the "Bank Repo Sale" "COAF Repo sale" or "Public Sale").

## PARTIES

2. Representative Plaintiffs Michael Dudo and Danielle Dudo are adult individuals who are citizens of Pennsylvania, residing at 414 Mount Pleasant, New Castle, PA 16101. They were co-debtors and/or co-obligors on their respective vehicle loan.

3. Plaintiff Gwendolyn Terrell is an adult individual who is a citizen of Pennsylvania, residing at 7610 Mulford Street, Pittsburgh, PA 15208.

4. Representative Plaintiff Scott Clark is adult individual who is a citizen of Pennsylvania, residing at 2192 Route 310, Reynoldsville, PA 15851. He and his late wife, Lisa, were co-debtors and/or co-obligors on their respective vehicle loan. On May 3, 2018, the Jefferson County Register of Wills granted Letters of Administration to Scott Clark.

5. Plaintiffs Anthony Wagner and Constance Wagner are adult individuals who are citizens of Pennsylvania, residing at 115 Lidwell St., Fallen Timber, PA 16639. They were co-debtors and/or co-obligors on their respective vehicle loan.

6. Representative Plaintiff James Dwyer is an adult individual who is a citizen of Pennsylvania, residing at 3208 Ladoga St., Pittsburgh, PA 15205.

7. Defendant Capital One Auto Finance is a division of Capital One, N.A. (hereafter "COAF") and is a citizen of Virginia with its principal place of business at 1680 Capital One Dr., McLean VA 22102 in Fairfax County, Virginia.

8. Capital One Auto Finance is a fictitious name registered in Pennsylvania by Capital One, N.A., the sole defendant in this matter. At all relevant times, COAF was (or is) the assignee, holder, and/or servicer of loans secured by Plaintiffs' and Class Members' vehicles when each of the subject statutory notices were sent (or caused to be sent) and/or is (or was) otherwise responsible for and/or participated in commercially unreasonable acts set forth below.

## JURISDICTION

9. COAF regularly and systematically conducts business throughout Pennsylvania.

10. Plaintiffs, individually and on behalf of the putative classes, are masters of their complaint and are expressly crafting their complaint to avoid federal jurisdiction. *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 595–96 (2013). In this connection, they are only making claims for statutory damages pursuant to 13 Pa. C.S. 9625(c)(2) based upon purely *procedural* violations of the UCC. They and the putative class are making no allegations of actual or concrete injury, and do not allege nor request actual damages. As the masters of their complaint, Plaintiffs have explicitly and intentionally limited their relief to minimum statutory damages for procedural violations under Pennsylvania law so they do not have standing under Article III.[1]

11. Notwithstanding the foregoing, Plaintiffs concede that there is CAFA jurisdiction for this controversy.

## IV. DEFINITIONS

12. **Adesa Mercer Auction or Adesa Mercer**: These terms refer to a site where both wholesale/dealers-only private auctions as well as public auctions (those open to the general public to attend and bid) occurred during the class period. According to Adesa's website, the auction facility is located at 758 Franklin Road, Mercer, PA 16137.

---

[1] Plaintiffs filed their original complaint in Jefferson County, Pennsylvania, their desired venue where COAF conducts business. This complaint is filed to ensure that the pleadings accurately reflect the recent *Langer* class settlement and is *not* an attempt to submit to federal jurisdiction by waiver or otherwise. Plaintiffs maintain that this action should be remanded due to lack of subject matter jurisdiction. *See*, ECF 12 and 13. Due regard for the rightful independence of state governments, which should actuate federal courts, requires that those courts scrupulously confine their own jurisdiction to the precise limits that a federal statute has defined. *Victory Carriers, Inc. v. Law*, 404 U.S. 202, 92 S. Ct. 418, 30 L. Ed. 2d 383 (1971).

13.    **Debtor**: The term "Debtor" is "A: (1) person having an interest, other than a security interest or other lien, in the collateral, whether or not the person is an obligor ..." *See*, 13 Pa. C.S.A. §9102.

14.    **Motor Vehicle**:  Except as otherwise stated, the term "Motor Vehicle" means a device in which, upon which or by which a person or property is or may be transported or drawn upon a public highway, including an automobile, a truck, a sports utility vehicle, a van, a minivan, a recreational vehicle, a motorcycle, or a truck. The term is not intended to include a semitrailer or manufactured home.

15.    **Notice of Repossession**: The term "Notice of Repossession" refers to a post-repossession consumer disclosure notice and has the same meaning as the term "notification of disposition," in 13 Pa.C.S.A. §§9611, 9613, and 9614. COAF used at least one standardized, uniform form throughout the Class Period. The only information modified in the Notices of Repossession which is unique to each customer consists of amounts, personally identifiable information, unique data pertaining to the repossessed vehicle, the customer's loan information, and dates.

16.    **Schumer Box**: The term "Schumer box" is a table with a standardized format that discloses the rates, fees, terms and conditions of a credit card or other lending agreement as required under the federal Truth in Lending Act (TILA). An exemplar of a Schumer Box is shown in the Damages section below.

### STRICTLY PROCEDURAL VIOLATIONS OF PENNSYLVANIA UCC

17.    In the course of the repossession and disposition process, COAF had a statutory obligation to provide a "reasonable authenticated notification of disposition" (i.e. "Notice of Repossession") of the collateral, containing mandatory information about the repossession and intended disposition of the vehicle. 13 Pa.C.S.A. §9611.

18. 13 Pa.C.S.A. §9613(1)(iii) and §9613(1)(v) (applicable to consumer transactions via §9614(1)(i)) requires a Notice of Repossession to state "the method of intended disposition" and to state "the time and place of a public disposition or the time after which any other disposition is to be made."

19. The Notices of Repossession sent to the Plaintiffs and Class Members by COAF violated 13 Pa.C.S.A. §9614(1)(i) (incorporating §9613(1) for consumer transaction, including but not limited to §9613(1)(iii) and §9613(1)(v)) by stating that the disposition (sale) would be by private sale when the Plaintiffs' and Class Members' repossessed vehicles were actually sold at a public sale and by failing to disclose the time and place of the public disposition.

20. Official Comment 7 to 13 Pa.C.S. §9610 defines "public disposition," i.e. a "public sale":

> [A] "public disposition" is one at which the price is determined after the public has had a meaningful opportunity for competitive bidding. "Meaningful opportunity" is meant to imply that ***some form* of *advertisement* or *public notice* must precede the sale (or other disposition) and that the public must have access to the sale (disposition)**. (Emphasis added).

## FACTS

21. COAF, as secured creditor, or its agents, repossessed the Representative Plaintiffs' and Class Members' vehicles during the Class Period (December 31, 2012 through and including March 23, 2018).

22. After having repossessed their vehicles, COAF sent each Plaintiff and class member a computer-generated post-repossession consumer disclosure notice form Notice of Repossession to inform them, *inter alia*, that their vehicle(s) had been repossessed, the alleged amount owed, and the intended method of disposition of the repossessed vehicle [whether the vehicle would be sold at a public auction or a private auction].

23. All Notices of Repossession sent to the Representative Plaintiffs and Class Members in the Public Auction Class stated that the repossessed vehicle would be sold at a "private sale," a sale/auction at which the Class Members were not permitted to attend and bid on their repossessed vehicle.

24. COAF's disclosure regarding the intended disposition was systematically inaccurate. The repossessed vehicles of all Representative Plaintiffs and Class Members in the Public Auction Class were either offered for sale and/or sold at a public sale at the Adesa Mercer at an auction advertised to the public, inviting their attendance (i.e., *"Public Welcome"*).

25. At all times throughout the class period, Representative Plaintiffs and Class Members were permitted to attend the public auction at the Bank Repo Sale at which their respective repossessed vehicles were offered for sale and/or sold.

### Advertisements / Public Notices

26. At all relevant times, Adesa Mercer's Bank Repo Sale was advertised to the public and/or public notices were provided, which invited members of the public to attend the auction. Adesa promoted its public sale (i.e., its Bank Repo Sale) by both advertisements and public notices (many of which doubled as both):

    (a) internet advertisements / public notices;

    (b) fax advertisements which Adesa sent to members of the public who requested a list of vehicles scheduled to be sold at an upcoming public auction; and,

    (c) newspaper(s) advertisements (i.e., a classified ad) promoting its website which had general public notices and/or advertisements of the public sale.

### *Newspaper Ads / Public Notices*

27.     At all relevant times, as a matter of policy and practice, Adesa Mercer and/or its authorized agent(s) advertised the www.adesamercer.com website, the date, time, and location of the Bank Repo Sale and made the public notice that the public was welcome to attend and bid (via the statement "***PUBLIC WELCOME***"), thereby doubling as both a public notice and advertisement. Adesa promoted its Bank Repo Sale, in at least one newspaper, the *Allied Times* (**Exhibit 1**).

### *Internet Ads / Public Notices*

28.     The Adesa Mercer Auction's website www.adesamercer.com promoted the Bank Repo Sales for *at least* several years throughout the putative class period stating that some of its auctions (i.e., Capital One Repo Sales or Bank Repo Sales) were open to the public to attend. [2] The www.adesamercer.com website stated:

> We are a dealer only auction – ***with the exception of COAF Repo sales that are open to the public.*** Bank Repo sales are weekly and units run in Lane [varies by advertisement] at 9:00 am. (Emphasis added).

### *Fax Advertisements*

29.     Adesa sent fax advertisements, upon request, by any member of the general public who provided their name and a facsimile number, irrespective whether the person is affiliated with any auto dealership. An exemplar of a fax blast sent to members of the public is attached as **Exhibit 2** (vin numbers redacted). The format of the fax blast advertisement is always the same insofar as

---

[2] Archives of the www.adesamercer.com website and its respective archival date are set forth below: August 18, 2015 (**Exhibit 3**); January 10, 2016 (**Exhibit 4**); March 14, 2016; (**Exhibit 5**); (May 22, 2016) (**Exhibit 6**); October 4, 2016 (**Exhibit 7**); May 20, 2017 (**Exhibit 8**); September 14, 2017;(**Exhibit 9**); March 30, 2018 (**Exhibit 10**). The "Internet Archive" only has archives of Adesa's website from August 15, 2015 through March 30, 2018. Any earlier versions of the website will have to be obtained via discovery. Plaintiffs allege that these advertisements pre-dated August 18, 2015. This fact is supported by the reference on p. 5 of the 8/18/15 webpage which states when it was "Last update 8/17/15."

7

the advertisement lists the year, make, model, color, # of doors, and mileage for each vehicle to be auctioned at Adesa's public sale. These faxes are sent to any member of the general public who requested that these advertisements to be faxed to them. Only their name and fax number were required.

### *Adesa Mercer's Practice to Sell All Bank Repossessed Vehicles at Bank Repo Sale*

30. While Pennsylvania permits a secured creditor to sell its repossessed chattel at a public or private sale pursuant to 13 Pa. C.S. §9613, Ohio law has required since July 1, 2001, that the secured creditor sell its repossessed chattel sold via retail installment contract "by public sale only" pursuant to the Retail Installment Sales Act, O.R.C. 1317.16.

31. Due to Adesa Mercer's close proximity to Ohio, in an effort to service its bank patrons in Ohio and Pennsylvania, it executed a standardized policy and practice to sell all bank repossessed vehicles during the class period, including COAF's repossessed vehicles, at the Bank Repo Sale, a public sale advertised and open to public attendance.

## DAMAGES

### *The UCC Provides for Minimum Statutory Damages*

32. 13 Pa. C.S.A. §9625(c)(2) allows consumer debtors such as Plaintiffs (and members of the putative class) to recover statutory damages of not less than the credit service charge (finance charge) plus 10% of the principal amount of the obligation (amount financed) because COAF "failed to comply with this chapter." These figures are readily determinable simply by a review of the Schumer Box of each Class Members' retail installment sales contract.

33. By way of example using the Schumer Box of a retail installment contract of a random COAF borrower, the §9625(c)(2) statutory damage calculation is based upon the Finance Charge ($8,295.30) + 10% of the Amount Financed ($1,301.43) = $9,596.73.

| FEDERAL TRUTH-IN-LENDING DISCLOSURES | | | | |
|---|---|---|---|---|
| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate | FINANCE CHARGE<br>The dollar amount the credit will cost you | Amount Financed<br>The amount of credit provided to you or on your behalf | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled | Total Sale Price<br>The total cost of your purchase on credit, including your down payment of $ 1000.00 |
| 21.00 % | $ 8295.30 | $ 13014.30 | $ 21309.60 | $ 22309.60 |

Insurance. You may buy the physical damage insurance the contract requires (see back) from anyone you choose who is acceptable to us. You are not required to buy any other insurance to obtain credit.

If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions.

Check the insurance you want and sign below
**Optional Credit Insurance**
☐ Credit Life    ☐ Buyer    ☐ Co-Buyer    ☐ Both

34. Comment 4 to Section 9625 makes clear that statutory damages are intended to establish a secured party's liability for violations of, *inter alia*, the notice provisions in consumer goods transactions, and ***do not require any actual injury or actual damages*** in order for a consumer to bring a claim for statutory damages. That Comment states in pertinent part:

> 4. **Minimum Damages in Consumer-Goods Transactions.** Subsection (c)(2) provides a minimum, statutory, damage recovery for a debtor and secondary obligor in a consumer-goods transaction. It is patterned on former Section 9507(1) and is designed to ensure that every noncompliance with the requirements of Part 6 in a consumer-goods transaction results in liability, ***regardless of any injury that may have resulted***. Official Comment to §9625(c)(2).

35. Plaintiffs and Class Members seek statutory damages pursuant to 13 Pa. C.S. §9625(c)(2).

36. Statutory damages are not in the nature of the repayment of principal or interest already paid by Plaintiffs and Class Members and are not reflective of any actual damages.

## CLASS ACTION ALLEGATIONS

37. Plaintiffs bring this action on their own behalf and on behalf of a class.

### Class Definitions

38. Plaintiffs propose to define the first class (hereafter "Public Auction Class") as: All debtors and obligors:

(i) who entered into a retail installment sales contract in Pennsylvania for the financing of the purchase of a Motor Vehicle primarily used for personal, family or household use that was assigned to or purchased by COAF;

9

(ii) from whom COAF, as secured party, repossessed the Motor Vehicle or ordered it to be repossessed;

(iii) whose Motor Vehicle was repossessed in Pennsylvania;

(iv) to whom COAF sent a Notice of Repossession to a Pennsylvania address during the class period as defined below, that stated that the repossessed vehicle would be sold at a private sale; and,

(v) whose repossessed Motor Vehicle was sold and/or offered for sale at Adesa Mercer's Bank Repo sale, or at any auction at which members of the general public were invited to attend.

39. The Public Auction Class excludes Timothy Nesmith, the named plaintiff in *Timothy Nesmith v. Capital One Auto Finance*, No. 2:15-cv-037930AB (E.D. Pa. 2015) and Randy and James Langer, the named Plaintiffs in *Langer v. Capital One Auto Finance*, No. 2:16-cv-06130-HB (E.D. Pa. 2016)("*Langer*") and any class member in *Langer* who who is not precluded from pursing a recovery in this case in accordance with the Agreement and Release (ECF dkt. 93-3)(hereafter "Langer Settlement Agreement").

40. Plaintiffs propose to define a second class (hereafter "Langer Public Auction Class"), pending final approval and dismissal of the *Langer* case, as: All Class 2 Releasors as defined in the *Langer* Settlement Agreement who are not also Class 1 Releasors: who have not excluded themselves from the *Langer* settlement and who are Class Members of the Public Auction Class.

## Class Period

41. The Class period for each class runs from December 31, 2012 through and including March 23, 2018.

## Class Requirements

42. The size of each of the classes described in this pleading exceeds 39 people, which makes the classes so numerous that joinder of all members is impractical.

43.     The classes and any trial would be readily manageable as the claims relate to standardized policies and practices and form statutory post-repossession consumer disclosure notices.

44.     The questions of law and fact common to the classes include, but are not limited to, the following questions:

   (a)   Whether Plaintiffs and Class Members entered into a consumer vehicle installment sales contract that was assigned to and/or purchased by COAF and pledged their vehicle as collateral;

   (b)   Whether COAF or its agents repossessed the financed vehicle of the Plaintiffs and Class Members or ordered it to be repossessed; and,

   (c)   Whether COAF's subject Notice of Repossession violated the procedural requirements of 13 Pa. C.S. §9614(1)(i), particularly §9613(1)(iii) and (v).

45.     The questions of law and fact common to the class predominate over any questions affecting only individual members.

46.     The Representative Plaintiffs' claims are typical of those of the Public Auction Class and/or the Langer Public Auction Class. All are based on the same factual and legal theories. All Class Members entered into a consumer vehicle installment sales contract that was assigned to and/or purchased by COAF; COAF or its agent repossessed their vehicle in Pennsylvania; COAF sent them a Notice of Repossession during the class period which stated the repossessed vehicle would be sold at a private sale; and the vehicle was instead sold and/or offered for sale at a public sale at Adesa Mercer.

47.     Assuming the Dudos and Clarks do not exclude themselves from the Langer settlement, then, as Class 2 Releasors in *Langer* who are not also Class 1 Releasors, then any one of their respective claims are also typical of the Class Members in the Langer Public Auction Class,

and have claims typical of that class. To the extent that any of them exclude themselves, then that person is a class member of the Public Auction Class.

48. The practices at issue that COAF employed were standardized, uniform practices.

49. Plaintiffs will fairly and adequately represent and protect the interests of the classes.

50. The Plaintiffs are represented by counsel that is competent and experienced in both consumer protection and class action litigation.

51. Plaintiffs have no conflict with Class Members in the maintenance of this action, and their claims are identical to or at least typical of claims of the Class Members.

52. A class action is superior to other available means for the fair and efficient adjudication of this controversy since individual joinder of all Class Members is impracticable.

53. This class action represents the fairest and most efficient method of adjudicating this controversy. Because most Class Members either do not know that their statutory procedural rights as described herein have been violated and in the manner described above and could not economically justify the effort and expense required to litigate their individual claims or have little interest in or ability to prosecute an individual action due to the complexity of the issues involved in this litigation, a class action is the most practical proceeding in which they can recover their statutory damages.

54. Plaintiffs and the Class Members have procedural claims that are similar, if not identical, in all material respects which will require application of the same law. Neither causation, reliance, nor harm is a precondition to a statutory recovery for the procedural violation of the UCC described above.

55. COAF has acted or refused to act on grounds generally applicable to the (putative) class.

56. There are no unusual legal or factual issues which would cause case management problems not normally and routinely handled in class actions.

57. Each debtor/obligor in the Public Auction and Langer Public Auction Classes are entitled to minimum statutory damages pursuant to §9625(c)(2) on account of COAF's procedural violation of the UCC as stated herein.

58. Minimum statutory damages can be calculated with mathematical precision and can be easily determined by accessing COAF's business records.

59. Plaintiffs seek no double recovery for damages.

60. The prosecution of several separate actions by the members of the class would create a risk of inconsistent or varying adjudications. A class action will serve the goals of judicial economy and ensure uniformity of decision.

## **COUNT 1**

61. Plaintiffs incorporate all preceding paragraphs as if fully set forth herein.

62. COAF systematically sent a form Notice of Repossession to Plaintiffs and Class Members alike which: (1) inaccurately stated the method of intended disposition of the repossessed vehicle by stating that the chattel would be sold at a "private sale" when COAF offered the chattel for sale and/or sold the chattel at a public auction; and (2) failed to disclose the time and place of the public disposition in violation of 13 Pa.C.S. §9614(1)(i), which incorporates §9613(1)(iii) and §9613(1)(v).

WHEREFORE, Plaintiffs, individually and on behalf of the Classes, request that this Honorable Court:

A. Certify the requested classes and appoint the undersigned as class counsel; and,

B.  Award minimum statutory damages as provided by 13 Pa. C.S. §9625(c)(2) to each member of the Public Auction Class and, as applicable, the Langer Public Auction Class.

Respectfully submitted,
SHENKAN INJURY LAWYERS, LLC.

_____
Richard Shenkan
*Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that a copy of this pleading was sent to all counsel of record by first-class mail, ECF, and e-mail on July 12, 2019.

SHENKAN INJURY LAWYERS, LLC.

_____
Richard Shenkan
*Attorney for Plaintiffs*

14